1831.

Johnson
v.
Thomas.

---

### JOHNSON vs. THOMAS.

Where a cause was argued before a former chancellor, but before a decision therein he went out of office, and also the complainant died; *held* that the cause could not be re-argued before the new chancellor without being revived.

If the whole ground of the suit has been removed by the death of the complainant, the court will not hear an argument merely to determine a question of costs.

In a suit at law, if the dowress dies before her right is established, her personal representatives have no remedy either for costs or for the mesne profits.

If the husband died scised, the death of the dowress, pending a suit in his court for her dower, will not deprive her personal representatives of the arrears due at the time of her death; but they may revive the suit for the purpose of obtaining such arrears of dower.

But where the husband did not die seised of the premises, if a suit in chancery abates by the death of the complainant before her right to dower is established, the personal representatives are not entitled to any arrears of dower, and therefore cannot revive.

The revised statutes, however, have now given the widow a better remedy for her dower, and a more extended right to damages for arrears, than was provided by the former law.

THE complainant in this cause filed her bill to recover dower in certain real estate of which her husband was seised during his life time. During her coverture, she, in conjunction with her husband, mortgaged the premises to B. Walker, which mortgage still remains unsatisfied in the hands of Walker's executors and trustees, under whom the defendant is in possession. The premises were also sold on a judgment against the husband, in his life time, and were purchased at such sale by Walker. This interest likewise passed to Walker's executors and trustees under his will. A cross-bill was also filed by the defendant and the executors of Walker, setting up their rights under the mortgage executed by the complainant and her husband. The causes were heard before the late chancellor, in 1826 ; but before they were decided, the complainant died. The executor of the complainant now pre-

April 5th.

1831.

Johnson·
v.
Thomas.

sented a petition to the present chancellor, praying that a decree might be entered in the name of Ann Johnson, as of the time when the cause was originally argued, to enable him to obtain the mesne profits and the costs; or that the suits might be revived in his name and brought to a hearing, for the same purpose.

*B. F. Cooper,* for the executor. This court has decided, that where a defendant dies after the argument and before the decision of a cause, the decree will be entered so as to relate back to the term when the argument was heard. *Campbell* v. *Mesier,* 4. John. Ch. R. 334, 342. 2 Fowler's Exch. Prac. 169. *Davis* v. *Davis,* 9 Ves. 461. 2 Mad. 398.) There cannot, on principle, be any difference between the case of a defendant's and a complainant's dying before the decision of a cause; but if there be, the reason is stronger in favor of a complainant than a defendant; for, on the latter, the decree may be supposed to operate injuriously, and it can make no difference with him whether the complainant or his executor receive the benefit. If a bill of interpleader be filed, and the complainant die after trial directed between the defendants, a bill of revivor is not necessary; for the defendants themselves are virtually defendants and plaintiffs, and may proceed against each other. In this case there was a cross-bill, in which Ann Johnson was defendant, in relation to the same matter; and she being both plaintiff and defendant, the case is perhaps within the principle of the above rule. (Anon. 1 Vern. 351. 2 Comyn's Dig. tit. Chan. Bills of Revivor, p. 410.) At common law, the death of a sole plaintiff or defendant, before final judgment, would have abated the suit; but if either party, after verdict, had died in vacation, judgment might have been entered that vacation as of the preceding term, and it would have been a good judgment at common law as of the preceding term. And if either party die after a special verdict, and pending the time taken for argument or advising therein, or on motion in arrest of judgment, or for a new trial, judgment may be entered at common law, after his death, as of the term the postea was returnable, or judgment will otherwise be given, nunc pro tunc, that the delay arising from the act of the court may

not turn to the prejudice of the party. (Tidd's Pr. 845, 6.) If courts of law can thus exercise an authority for the purpose of doing substantial justice, it would be surprising indeed if a court of equity could not do the same. *Ut res magis valeat quam pereat.* The court having had jurisdiction of the cause, will retain it to do substantial justice, and to afford the dowress a relief beyond that which she could obtain at law. (*Curtiss* v. *Curtiss,* 2 Brown's Cas. in Ch. 620.) In this case, a bill of revivor and supplement, filed by the executors of the widow, she dying before decree, for the arrears of dower was sustained, and decree accordingly.

But it is contended, that if a decree cannot be entered nunc pro tunc, the suit may be revived by the executor of the complainant. By the 7th section of the act concerning the court of chancery, ( 1 R. L. 489,) it is provided that "If the complainant shall die pending any suit wherein the cause of action shall not survive, his lawful representatives, and other persons interested by his death, may, on affidavit thereof and on motion in open court, be made complainants in the suit, and be permitted to amend the bill as their interests may require; to which amendment the defendant shall be compellable to answer, and the action shall proceed to issue and trial as in ordinary cases." By virtue of the provisions of this statute, the executor is entitled to a decree for one third of the mesne profits of the premises in question, with interest from the time the widow's right accrued, and for costs for the defendant's vexatious defence. If to this claim the defendant objects that the husband of the complainant did not die seised; that our statute in relation to dower, in R. L. 60, gave the widow, in such case, "dower of the lands according to their value, exclusive of the improvements made since the sale," which can be recovered only in her life time; and that the allowance of the one third of the mesne profits, with costs, would be against the provisions of the act in R. L. 57, sect. 2, which gives the widow damages only in case of a deforcement, and costs only where damages are recovered; (see *Humphrey* v. *Phinney,* 2 John. R. 484; *Dorchester* v. *Coventry,* 11 John. R. 510;) we answer that the assignment by metes and bounds

1831.

Johnson
v.
Thomas.

is but one of several methods of assigning dower, and belongs more particularly to real actions. In some cases there may be an alternate use of the property; in others an assignment of one, third of the rents and profits; and in others we think the court may decree to the complainant a gross sum, equal in value to the amount of her interest in the premises when her right accrued, to be computed according to the rules of computation on an annuity for lives. (*Swaine* v. *Perine*, 5 John. Ch. R. 482, 495. *Hale* v. *James*, 6 John. Ch. R. 558. *Coates* v. *Cheever*, 1 Cowen's R. 476, 478, 9.) This court has long since decided, that if the widow die before establishing her right to dower, it will, in favor of her personal representatives, decree an account of the rents and profits, since the time her rights accrued. (*Curtiss* v. *Curtiss*, 2 Bro. C. C. 620. 1 Fonbl. Eq. 22, 23, note.) And it would indeed be hard if a court of equity should, say that a defendant by a protracted defence to a suit for dower, could exonerate himself from accounting for the mesne profits, for the time he unjustly withheld the possession. Again; we say that our act in 1 R. L. 57, sect. 2, is substantially a transcript of the statutes of Merton and Gloucester; the former of which it is true gave damages in case of a deforcement; and the later, costs, in case there were damages; that the rules in relation to damages and costs are rules of law, not of equity. They were established to regulate the proceedings upon writs of dower, and not upon bills in equity. Chancery did not assume jurisdiction in cases of dower until centuries after the passage of these acts; and when it did so, it was to relieve the dowress from the embarassments at law, and to give her complete relief. (1 Roper's Law of Husband and Wife, 445.) A court of equity may not, it is true, where the husband does not die seised, award the damages given by the statute of Merton. But a court of equity will give the dowress mesne profits from the time her right accrued. (1 Roper, 435, 448, 9. 1 R. L. 57, section 2.) The widow is entitled to be endowed immediately on the death of her husband. This right draws after it the right of an account. The tenant in possession may also be considered as a trustee for the widow. This court has never been governed by the rules of the stat-

utes of Merton and Gloucester. That this last position is correct, appears from the decisions of this court in relation to costs ; for the court has asserted its right to give costs in its discretion, whether the husband died seised or not, and has specified one class of cases where it will give costs, to wit, where the widow has demanded her dower before suit brought, (as she did in this case,) and the defendant has made a groundless defence, without any qualification as to the husband's dying seised or not seised. (*Hazen* v. *Thurber*, 4 John. Ch. R. 604. *Swaine* v. *Perine*, 5 id. 495. *Hale* v. *James*, 6 id. 258, 263.) If, then, the jurisdiction of this court was not altogether independent of the statutes of Merton and Gloucester, how could the court be justified in saying it would give costs in dower, as in other cases, as its discretion dictated ? Why would it not be confined in giving costs to a case of deforcement. The truth is, that the court has the conscience of the defendant in dower in its keeping, as much so as that of any other defendant ; and where he will not voluntarily, it will compel him to do justice to the complainant. If, however, it be still insisted that the widow being dead there can be no recovery of the mesne profits, let us see whether the right to costs is extinguished, and what the statute, (1 R. L. 60 & 58,) and our decisions mean. The statute, 1 R. L. 57,) says, when the widow is deforced, the defendant shall yield damages to the plaintiff, &c. When she is not deforced, the statute, (1 R. L. 60,) says she shall recover for her dower of "the lands sold by her husband, according to the value of those lands, exclusive of the improvements made since the sale." The decision of the courts amount to nothing more than that, where the plaintiff is entitled under the statute to damages, she may have costs ; and that she shall not have costs where the defendant has pleaded tout temps prist, and the plaintiff, instead of praying judgment according to the tender, has persisted in going on to judgment, and in the end obtained only that which the defendant offered to assign her ; or rather, the decisions are altogether silent about costs in such case ; but neither in these decisions, nor in the statute, is it declared that the dowress shall not be entitled to costs where her husband did not die seised, but only that she

1831.

Johnson
v.
Thomas.

may be entitled to costs where he did die seised. It is not improbable that the phraseology, " provided that dower of any lands sold by the husband shall be according to the value of the lands, exclusive of the improvements made since the sale," was intended for no other purpose than to fix the amount of the specific value of the land to be recovered as dower when the husband did not die seised, namely, that it should be the value of the land at the time of alienation, and not the value at the time of the seisin recovered ; and it clearly never was intended, by the use of this language, that there should be no recovery of the mesne profits according to that value, and no costs for an unconscientious defence to prevent such recovery. If the right of the executor be questioned in this cause, on the ground that the interest of the dowress savors not of the personalty, but of the realty, it is answered that the widow has no estate until assignment ; for the law casts the freehold upon the heir, on the death of the ancestor, and until dower is legally assigned it is a right resting in action only. (1 Cruise, 159. 2 Gilbert on Tenures, 26. *Jackson* v. *Aspell,* 20 John. R. 411, 413. *Jackson* v. *Van Derheyden,* 17 John. R. 168.) If we are right in our opinions as to the powers of a court of equity, whatever may be the correctness of those with regard to courts of law, the executor is in conscience entitled to mesne profits, as the widow would have been entitled to them had she lived. There is, it is believed, no precedent which forbids the granting such relief in England, and certainly there is none in this country ; nor can any reason be assigned why the widow did not become possessed of the mesne profits in her life time, but the injustice of the defendant, or the delay of the court ; and if there ever be a case in which a court of equity should discard the technicalities of the law, and no substantial justice between the parties, it is in a case of dower, a claim which even the law regards favorably, as it is the support and solace of the widow in the winter of her life.

*S. Beardsley,* for the defendant, contended that no precedent could be found for this motion ; that a decree could not be entered nunc pro tunc, where a different chancellor pre-

sided from the one before whom the cause was argued; that damages could not be given to the widow where the husband did not die seised, and if she was not entitled to damages, that she could not recover costs; and that where the husband did not die seised, the widow could not, either at law or in equity, recover mesne profits. He cited 2 Atk. R. 141; *Dormer* v. *Fortesque*, 3 id. 132, and note: *Embree* v. *Ellis*, 2 John. R. 119; *Humphrey* v. *Phinney*, 2 id. 484; *Mundy* v. *Mundy*, 2 Ves. jun. 125.

THE CHANCELLOR. I think it would be carrying the principle too far to permit this cause to be argued before the present chancellor, without revival, and then to enter a decree nunc pro tunc, as at the time when it was argued before his predecessor. If the executor has the right to revive, such a course is unnecessary; and if the whole grounds of the suit have been removed by the death of the complainant, it would be against the settled practice of the court to hear an argument of the original merits of the cause, merely for the purpose of determining a question of costs between the parties. (12 John. R. 500. 1 Sim. & Stu. 39. 3 John. Ch. R. 317. Mad. & Geldart's R. 365.)

Where the dowress brings her action at law, if she dies before her right is established, her representatives have no remedy for costs, or for the mesne profits of the premises after her right accrued. By the statute of Merton, (20 Hen. 3 c. 1; R. L. of 1813, p. 57, § 2,) she could only recover damages, in cases where the husband died seised. And even in cases coming within that statute, if she had not made a formal demand of dower, before suit brought, the defendant at law might plead that he had been always ready to assign the dower, and thus excuse himself from damages and costs. But in chancery the rule is different. There, if the husband died seised, the widow may recover against the heir, or devisee, her share of the rents and profits from the time the right accrued, although no demand was made previous to the commencement of the suit. *Mundy* v. *Mundy*, 2 Ves. jun. 122. *Russell* v. *Austin*, 1 Paige's R. 192. *Hazen* v.

*Thurber*, 4 John. Ch. R. 604.) In such cases the death of the dowress, pending the suit in this court, does not deprive her personal representatives of the arrears of dower; but they may revive, for the purpose of having the right to such arrears determined by the decree of the court. And the question of costs will be decided upon the same principles which would have governed the decision of this court previous to her death.

It is however insisted on the part of the defendant in this suit, that as the husband did not die seised, the wife could not have recovered any arrears of dower, if living. If he is right in that position, the petitioner cannot revive merely to settle the question of costs. It is evident that, under the statute which was in force at the death of the complainant, no damages for arrears of dower could have been recovered at law; and the question is whether this court, in a direct proceeding here for the dower, will give to the complainant a more extensive remedy. At common law, and before the statute of *Merton*, the widow could in no case recover damages in an action of dower at law; and this court had not at that time assumed jurisdiction of suits for dower, except in those cases where the tenant interposed some equitable defence, or proceeding to prevent her recovery in the common law courts. Since the passing of that statute, courts of law have permitted the tenant to interpose a technical defence, to the claim for damages and costs, that he has always been ready to assign dower, but that the plaintiff has never demanded it of him. Even at law, however, the plaintiff was entitled to recover the value of the use of one third of the premises, from the death of the husband, if this plea was not interposed, or if a demand was proved. (*Dobson* v. *Dobson*, Cases Temp. Hardw. 19.) In this court, under the equity of that statute, the heir or devisee, who have actually received the widow's share of the rents and profits of the premises, has been considered as holding the same in trust for her, although a formal demand of dower had not been made. Roper seems to take it for granted, that the court of chancery would go still further; and give to the wife a remedy for arrears of dower in cases not embraced by the statute of Merton. (1 Roper's Husband &

Wife, 449.)  He admits however that the case of *Delver* v. *Hunter*, in the court of exchequer, in 1719, (Bunb. Rep. 57,) is against him on this point.  And he cites no case in which a court of equity has given to the complainant arrears of dower, on a direct proceeding for that purpose, where the husband aliened the premises before his death.  In the absence of all authority, I do not think myself justified, under the circumstances of this case, to decide that the executor has a right to revive, and to recover the arrears of dower, deducting therefrom his proportion of the mortgage, which is a previous incumbrance on the premises.  The revised statutes have given to the widow a better remedy for her dower, and a more extended right to damages for the detention thereof, than that which existed at the commencement of this suit.  There cannot therefore be any reason for extending the equitable principles heretofore established, with a view to future cases.

    The petition is dismissed in this case, but without costs.